UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

RICARDO PIMENTEL,

        Petitioner,

 -v-                                                      No.  15CV3057-LTS
                                                                    No.  10CR905-LTS

UNITED STATES OF AMERICA,

        Respondent.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

Petitioner Ricardo Pimentel ("Petitioner" or "Pimentel"), was convicted, upon a guilty plea, of conspiring to sell between 1,000 and 3,000 kilograms of marijuana, and, on April 23, 2014, was sentenced principally to a below-Guidelines custodial sentence of 204 months of imprisonment.  (See J., docket entry no. 1482.)  Petitioner now moves, pro se, pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, contending that he received ineffective assistance of counsel in connection with his guilty plea and sentencing, and that the sentence imposed was substantively unreasonable.  Petitioner also seeks to have certain information removed from his Presentence Investigation Report ("PSR").[1]

---

[1] It appears that Petitioner's principal concern is that the inclusion in his PSR of information regarding conversations that he had with a drug co-conspirator about the potential perpetration of violence on others with whom Petitioner had drug dealings has had adverse ramifications for Petitioner's designation and program opportunities within the Bureau of Prisons.  As explained below, the same objections to the PSR passages were raised, and overruled, at Petitioner's sentencing.  In any event, the Court does not have power under Federal Rule of Criminal Procedure 32 to correct inaccuracies in a PSR after a Defendant has been sentenced, see Cotona v. Federal Bureau of Prisons, No. 12CV609, 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013).

The Court has reviewed thoroughly the parties' submissions in connection with Petitioner's 28 U.S.C. § 2255 motion.  Construing Petitioner's arguments liberally to raise the strongest arguments that they suggest, Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), the Court nonetheless denies Petitioner's motion in its entirety.

BACKGROUND

On November 9, 2010, Petitioner was charged in a twelve-count Superseding Indictment with, inter alia, participating in a criminal conspiracy to distribute over 1,000 kilograms of marijuana.  (Docket entry no. 130.)  Petitioner pleaded guilty to the narcotics conspiracy charge (Count Two of the Indictment) on March 29, 2012.  (Change of Plea Hr'g Tr. ("Plea Hr'g Tr.") 30, docket entry no. 785.)

At his change of plea hearing, Petitioner acknowledged that, in his signed plea agreement, he stipulated: that Petitioner is a Career Offender (Plea Hr'g Tr. at 20); that the relevant Sentencing Guidelines range for a custodial sentence was 262 to 327 months imprisonment ("Stipulated Guidelines Range") (id. at 16); and that Petitioner would not file a direct appeal, nor bring a collateral challenge to his sentence pursuant to 28 U.S.C. §§ 2255 and/or 2241, if his sentence fell within or below the Stipulated Guidelines Range (id. at 24).  Petitioner also confirmed that he had accepted the plea agreement and decided to plead guilty because he was in fact guilty.  (Id. at 30.)

Prior to accepting Petitioner's guilty plea, the Court questioned Petitioner to satisfy itself that Petitioner was entering into the plea knowingly, voluntarily, and competently.  Petitioner confirmed, inter alia, that: he had fully discussed his case with defense counsel, including the charges to which Petitioner intended to plead guilty, available defenses, and the

consequences of entering a guilty plea (id. at 6-10); Petitioner had read the Plea agreement, discussed it with defense counsel, and understood the Plea agreement prior to signing it (id. at 17); Petitioner was satisfied with defense counsel's representation of him (id. at 6); Petitioner understood he had the right to continue pleading not guilty and go to trial (id. at 7); and Petitioner understood that, by pleading guilty and not going to trial, Petitioner was also giving up the right to appeal any guilty verdict (id. at 8-9).

Petitioner also confirmed he understood, inter alia, that: upon conviction of Count Two by guilty plea, the Court had the authority to impose on Petitioner any sentence ranging from a minimum of ten years' imprisonment followed by five years of supervised release, to a maximum of imprisonment for life, followed by supervised release for life (id. at 12-14); and that the Court was required to calculate Petitioner's Sentencing Guidelines range and consider the range and 18 U.S.C. § 3553(a) sentencing factors in determining the appropriate sentence for Petitioner (id. at 14).

Following Petitioner's guilty plea, the Probation Department prepared a PSR, which included summaries of, and quotations from, several wire-tapped phone conversations between Petitioner and co-defendant Manuel Geovanny Rodriguez-Perez.  Paragraphs 29-31 of the PSR ("Paragraphs 29-31") summarized and quoted from a February 7, 2010, telephone conversation between Petitioner and Rodriguez-Perez, where "[Rodriguez-Perez] and [Petitioner] revealed plans to attack or kill rivals of the Pimentel Group," and "wherein [Rodriguez-Perez] discussed assisting with hurting or killing certain people who robbed [Petitioner] if those people went to the Dominican Republic."  Paragraphs 34-35 ("Paragraphs 34-35," together with Paragraphs 29-31, the "Rodriguez-Perez Conversations") described additional conversations between Petitioner and Rodriguez-Perez, in which Petitioner stated that

he was going to "rip" the face off someone who had allegedly stolen money from him and reported to Rodriguez-Perez that "my worker got shot in the back, twice."

Defense counsel submitted objections to the PSR to the Probation Department, including objections to the "subjective conclusions and characterizations" of the PSR's summary of the Rodriguez-Perez Conversations, and to the inclusion of summaries of the conversations at all because they did not reveal Petitioner's agreement to kill anyone. (Def. Sent. Mem. Ex. A., Nov. 8, 2013.) The Probation Department determined that the inclusion of the objected-to material was proper, and defense counsel made the same objections in Petitioner's Sentencing Memorandum and orally at sentencing. At no time did the Petitioner deny participation in the conversations. Rather, Petitioner represented that he had not initiated the discussions of violence and had only gone along with the conversations to placate Rodriguez-Perez, neither intending or agreeing to do harm to anyone. (Sent. Tr. 6.) The Government argued that the conversations were indicative of an intention to put the subjects of the conversations in danger and, in any event, indicated that Petitioner was a trusted member of the drug trafficking organization. (Id. at 6-7.)

The Court overruled Petitioner's objections to the inclusion of information regarding the Rodriguez-Perez Conversations in the PSR, finding that the information was relevant to his drug trafficking activity and that the conversations could fairly be interpreted as threatening the safety of individuals who had wronged Petitioner in that connection. (Id. at 7.) In explaining the role that the information played in the Court's determination of Petitioner's sentence, the Court acknowledged Petitioner's representation that he did not intend to have Rodriguez-Perez punish the individuals, but stated that the fact that Rodriguez-Perez discussed such matters with Petitioner indicated that Petitioner's connections with the conspiratorial group

were "deep" and that the depth of the connection was a significant factor in the court's determination of what sentence would properly address the sentencing factors of punishment, deterrence, protection of the public and promotion of respect for the law.  (Id. at 45.)  The Court did not find that Petitioner had actually entered into any agreement to kill or harm any person, and thus did not factor any such finding into its sentencing determination.

The Court applied the Career Offender Guidelines provisions, finding that the relevant Guidelines range was 262 to 327 months of imprisonment, then departed downward to credit Petitioner for 31 months of imprisonment that he had previously served on a conviction for relevant conduct, resulting in an adjusted Guidelines range of 231 to 296 months of imprisonment.  The Court then considered all the factors under 18 U.S.C. § 3553(a), varied downward as a result, and imposed a sentence of 204 months of imprisonment, to be followed by eight years of supervised release.  (Id. at 48.)

Following the entry of judgment, Petitioner filed a Notice of Appeal.  Petitioner's appeal was dismissed on October 30, 2014, pursuant to Petitioner's voluntary withdrawal.  Petitioner filed this motion pursuant to 28 U.S.C. § 2255 on April 9, 2015.

## DISCUSSION

A petitioner may prevail on a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 if he can show that his sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack.  The grounds for relief under Section 2255 are limited, out of "respect for the finality of criminal sentences, the efficient allocation of judicial resources,

and an aversion to retrying issues years after the underlying events took place." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks and citation omitted).

Petitioner claims that defense counsel failed to provide effective assistance in connection with his guilty plea because defense counsel "did not advise [Petitioner] that his range of punishment would be calculated while using the information of the uncharged conduct of the [Rodriguez-Perez Conversations]" and that "at no time, prior to, during, or after [Petitioner] entered his guilty plea, was he aware that he could or would be punished for conspiring to kill or hurt people"; and "that had counsel told [Petitioner] his offense conduct may subject him to punishment for conspiring to kill or hurt people, then [Petitioner] would not have entered a guilty plea." (Pet'r Mem. at 8.)  Petitioner also argues that he received ineffective assistance of counsel at sentencing because defense counsel's objections to the Rodriguez-Perez Conversations were "not proper and not supported by law or facts," (id. at 7), and defense counsel failed to raise "a constitutional objection to Petitioner being punished for an offense he did not plead to."  (Id.)  Petitioner further argues that "the district court erred in sentencing him when it considered facts related to an unproven conspiracy to kill or hurt people described in paragraphs 29-31, 34 and 35," and that the Court's consideration of that "uncharged conduct" rendered Petitioner's sentence substantively unreasonable.  (Id. at 4.)

Claim of Ineffective Assistance of Counsel in Connection with Guilty Plea[2]

To prevail on an ineffective assistance of counsel claim, Petitioner must show that (1) counsel's performance was deficient under an objective standard of reasonableness; and (2)

---

[2] The Government concedes that Petitioner has not waived his claim of ineffective assistance of counsel with respect to his plea agreement.  (See Gov't Opp. Def. Mot. 14, Jun. 26, 2015, docket entry no. 1745.)

Petitioner was prejudiced as a result of counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 688-94 (1984). In determining whether counsel's performance was deficient, "the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the challenger's burden is to show that the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-89.

In the context of alleged ineffective assistance of counsel rendered in connection with a plea, "[t]he second, or prejudice, requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process . . . . [T]he defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985); see also Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (petitioner "must convince court that a decision to reject the plea bargain would have been rational under the circumstances.")

Petitioner argues that defense counsel was ineffective because he failed to inform Petitioner that the "uncharged conduct" in the Rodriguez-Perez Conversations could be considered by the Court in determining Petitioner's "sentencing range,"[3] and that had Petitioner known that the conversations could be used in that manner, he would not have pleaded guilty or

---

[3] As explained above, Petitioner's Guidelines range was predicated upon his Career Offender status, and was reduced from the computed Career Offender Guidelines sentence to account for time previously served on a conviction for relevant conduct. No findings or factors relating to the Rodriguez-Perez Conversations played any role in the determination of Petitioner's Sentencing Guidelines range.

entered into the plea agreement.

Petitioner's ineffective assistance argument rests on the false premise that he was sentenced for the uncharged violent crime of conspiring to kill or hurt other individuals. As explained above, the Court made no finding that he had engaged in such behavior and did not sentence him on that basis. Thus, the complained-of failure by counsel to advise Petitioner that he could be subject to sentencing for such uncharged conduct cannot constitute a constitutional deficiency in counsel's performance and Petitioner cannot demonstrate that he was prejudiced by failure to warn him of a consequence that he did not suffer.

Construing Petitioner's argument as asserting that he would not have pleaded guilty had he known that the Rodriguez-Perez Conversations would be taken into account in any way in determining his sentence, he still fails to show any constitutional deficiency in counsel's performance and makes no showing that such a decision would have been rational. Upon questioning by the Court at his plea hearing, Petitioner specifically confirmed that he understood that the Court would consider sentencing factors under Section 3553(a) in determining Petitioner's sentence, and nonetheless decided to proceed with pleading guilty. (Plea Hr'g Tr. at 14.) Moreover, Petitioner would have been facing a maximum sentence of life imprisonment without the plea agreement, rather than 327 months, the Government's evidence against him was strong (see Plea Hr'g Tr. 28-30), and he would still have faced consideration of the Rodriguez-Perez conversations in connection with his sentencing. Petitioner has failed to show deficient performance by counsel and prejudice.

Petitioner's Remaining Claims are Waived

Petitioner's remaining claims regarding ineffective assistance of counsel at sentencing and the substantive unreasonableness of his sentence, both of which attack the actual

sentence imposed, are equally baseless as a factual matter and are, in any event, precluded by Petitioner's knowing, voluntary, and competent waiver of his right to challenge his sentence in his plea agreement.

Waivers contained within plea agreements are presumptively enforceable, except in "very limited situations," such as when the waivers were "not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence." U.S. v. Aravelo, 628 F.3d 93, 98-99 (2d Cir. 2010) (internal quotation marks and citation omitted). Although actual ineffective assistance of counsel in connection with a plea could cast doubt on the validity of a waiver, Petitioner has made no such showing here. See U.S. v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004) (rejecting notion that a waiver becomes unenforceable simply because a defendant "claims" ineffective assistance of counsel in connection with entering the plea agreement); see also U.S. v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) ("If we were to allow a claim of ineffective assistance of counsel claim at sentencing as a means of circumventing plain language in a waiver agreement, the waiver provision would be rendered meaningless."). Furthermore, a petitioner who has waived his right to challenge a sentence and raises an ineffective assistance of counsel at sentencing claim, but seeks only to challenge the sentence and not to withdraw his plea, is properly viewed as having raised "a dress[ed] up [] claim [of] a violation of the Sixth Amendment, [which] in reality is challenging the correctness of [the] sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government." Djelevic, 161 F.3d at 107.

Petitioner has not overcome the presumption that his waiver of the right to challenge any sentence within or below the Stipulated Guidelines Range is valid. He has not demonstrated that he was denied effective assistance of counsel in connection with his plea, nor has he demonstrated that his plea proceeding was defective in any other way. Furthermore, the record is clear that Petitioner knowingly waived his right to appeal the sentence that was imposed on him. Petitioner specifically acknowledged, in his plea agreement, that he was waiving his right to bring a direct appeal or collateral challenge to his sentence pursuant to 28 U.S.C. § 2255, if he was sentenced to 327 or fewer months of imprisonment. Petitioner was sentenced to 204 months of imprisonment. The waiver provision of his plea agreement thus precludes his claim of ineffective assistance of counsel at sentencing and his claim that his sentence is substantively unreasonable.

Finally, Plaintiff's reliance on the Second Circuit's recent decision in United States v. Morgan, 768 F.2d 227 (2d Cir. 2015), is misplaced. There, the appellate court reversed a criminal conviction, finding that the trial court's admission of evidence of a narcotics defendant's plot to murder a cooperating witness violated Rule 403 of the Federal Rules of Evidence and denied the defendant a fair trial. Morgan is inapposite here. Unlike the communications in that case, the Rodriguez-Perez Conversations took place in the course of and in connection with Petitioner's narcotics conspiracy crime. The murder plot in Morgan related to efforts to thwart the trial, and was conduct separate from the charged narcotics conspiracy. Furthermore, the rule of evidence applied in Morgan does not apply in sentencing proceedings, and the Court considered the Rodriguez-Perez Conversations (which undisputedly took place) for a proper purpose here, as indicative of Petitioner's significant connection to the leader of the narcotics conspiracy.

CONCLUSION

Petitioner's motion pursuant to 28 U.S.C. § 2255 is denied in its entirety. Because Petitioner has not raised meritorious claims, the Court also denies Petitioner's request for appointment of counsel.

Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C.S. § 2253(c)(1) (Lexis 2008). A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.S. § 2253(c)(2) (Lexis 2008); see generally United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate of appealabilty). The Court finds that Petitioner will not be able to sustain this burden. The Court declines to issue a certificate of appealability. Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

This memorandum opinion and order resolves docket entry number 1733, under case number 10 Cr. 905. The clerk of court is also directed to close case number 15 Civ. 3057.

SO ORDERED.

Dated: New York, New York
         December 14, 2015

                                                  /s/ Laura Taylor Swain
                                                 LAURA TAYLOR SWAIN
                                                 United States District Judge

A copy of this order has been mailed to:

Mr. Ricardo Pimentel # 64041-054
F.C.I. Ray Brook
P.O. Box 900
Ray Brook, New York 12977